UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ABBIE L. G.[1] | : | Case No. 3:21-cv-00167 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Abbie L. G. brings this case challenging the Social Security Administration's denial of her applications for a period of disability and Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #6).

**I.   Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income benefits in July 2015, alleging disability due to several impairments, including depression, anxiety, coronary artery disease, RLS, and a brain hemorrhage after a motor vehicle accident. (Doc. #6, *PageID* #207). Following several adverse decisions at the administrative level, Plaintiff appealed to this Court. *See Abbie L.G. v. Comm'r of Soc. Sec.*, No. 1:19-cv-485 (S.D. Ohio). Upon Joint Motion of the parties, this Court remanded the case to the Commissioner. *Id. PageID* #s 1621-26). After the Appeals Council issued a remand order (*Id.*, *PageID* #s 1627-31), a telephone hearing was held on February 18, 2021. Thereafter, the administrative law judge (ALJ) John M. Prince issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since March 13, 2013, the alleged disability onset date. |
| Step 2: | Plaintiff has the following severe impairments: gastrointestinal pain/status post resection and revision; degenerative disc disease of the cervical and lumbar spine, depressive disorder, and anxiety. |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … except that she is further limited to |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

>frequently balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, or poor ventilation; understanding, remembering , and performing simple, routine tasks without fast production requirements; occasionally interacting with supervisors, coworkers, and the public; and working in an environment with occasional changes that are explained in advance."
>
>She is unable to perform any past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 1535-51). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since March 26, 2013. *Id.* at 1551.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #6, *PageID* #s 1532-51, Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff contends that the ALJ failed to explain how Dr. Haskins' opinions relating to Plaintiff's deficits in concentration, persistence, and pace as well as in social interaction were accommodated for within the RFC. (Doc. #8, *PageID* #s 2227-32). She also argues that her claims should be remanded for a *de novo* hearing before a new ALJ because the ALJ who decided her case derived his authority from former Commissioner Andrew Saul, whose appointment was constitutionally defective. *Id.* at 2232-36.

#### A. Mental Limitations in RFC

Plaintiff alleges that the ALJ's analysis of the mental limitations included in her RFC is not supported by substantial evidence because he did not adequately address the opinions provided by the state agency psychological consultant, Kristen Haskins, Psy.D. (Doc. #8, *PageID* #s 2227-32). The Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc. #12).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a plaintiff's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner"). Additionally, it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue,* No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (Hogan, M.J.), *report and recommendation adopted*, No. 1:09CV411, 2010 WL 3730981 (S.D. Ohio Sept. 8, 2010) (Dlott, D.J.).

The ALJ's role is to determine the RFC based on his evaluation of medial and non-medical evidence. Ultimately, "the ALJ must build an accurate and logical bridge between the evidence and his conclusion." *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019) (Bowman, M.J.), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019) (Dlott, D.J.).

In this case, ALJ Prince concluded that Plaintiff had mild restrictions in her ability to understand, remember, and apply information as well as in her ability to adapt or manage herself. (Doc. #6-11, *PageID* #s 1539-40). Additionally, he found that she had no more than moderate limitations in her abilities to interact with others and to concentrate, persist, or maintain pace. *Id*. at 1539. In order to account for these limitations, the ALJ formulated an RFC that limited Plaintiff to "understanding, remembering, and performing simple, routine tasks without fast production requirements; occasionally interacting with supervisors, coworkers, and the public; and working in an environment with occasional changes that are explained in advance." *Id*. at 1540.

In formulating this RFC, ALJ Prince primarily relied on the medical evidence as well as the opinion of Dr. Mary E. Buban. (Doc. #6-16, *PageID* #s 2178-90). According to Dr. Buban's September 2020 assessment, Plaintiff had moderate limitations in maintaining concentration, persistence, and pace, but otherwise had only mild limitations in her abilities to understand, remember, and apply information, to interact with others, and to adapt and manage herself. *Id*. at 2184. With the exception of Dr. Buban's opinion that Plaintiff only had mild limitations in her ability to interact with others, ALJ Prince afforded "great weight" to her opinions as she had the opportunity to review the majority of the record and her findings of moderate limitations in concentration, persistence, and pace were largely consistent with the normal serial clinical findings. *Id. at* 1547-48. In reaching this conclusion, ALJ Prince pointed out that Dr. Buban did not have the benefit of observing Plaintiff or hearing her testify that she does not go out alone and has a tendency to isolate, though she is able to live and interact in her household of four adults. *Id*. at 1548. Thus, ALJ Prince found that the record justified a finding of moderate limitations in

Plaintiff's ability to interact, but he otherwise found Dr. Buban's assessment to consistent with the other evidence of record. *Id.*; *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").[4]

In response, Plaintiff contends that ALJ Prince's decision is not supported by substantial evidence because he did not properly review the opinions provided by Dr. Haskins. (Doc. #8, *PageID* #s 2227-32). Dr. Haskins reviewed Plaintiff's mental health record upon reconsideration. (Doc. #6-3, *PageID* #s 135-37). In assessing Plaintiff's sustained concentration and persistence limitations, Dr. Haskins concluded that Plaintiff was moderately limited in her abilities to carry out detailed instructions and to maintain attention and concentration for extended periods of time but was otherwise not significantly limited. *Id*. at 136. She explained that Plaintiff "would need a work area separate from others to enhance focus where [she] would receive intermittent supervision to ensure she was working towards her desired production and quality goals." *Id*. Dr. Haskins also opined that Plaintiff "would need flexibility with changing scheduled shifts and breaks when experiencing increased periods of symptoms." *Id*. Additionally, while Dr. Haskins confirmed that Plaintiff did have social interaction limitations, she specified that her ability to interact appropriately with the general public and her ability to accept instructions and respond appropriately to criticism from supervisors were not significantly limited. *Id*. at 136-37. Finally, Dr. Haskins opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting but was otherwise not significantly limited in her ability to adapt. *Id*.

---

[4] Plaintiff did not argue that the ALJ improperly weighed Dr. Buban's opinion.

at 137. Here, she noted that Plaintiff "would need major changes to set work routine explained in advance and slowly implemented to allow [her] time to adjust to new expectations." *Id*.

ALJ Prince assigned Dr. Haskins' opinions "some" weight, noting the record did not support the need for a separate work area or intermittent supervision. (Doc. #6-11, *PageID* #1549). Here, ALJ Prince acknowledged that Plaintiff reported difficulty leaving home but noted that her treatment records from recent years did "not suggest an interactional deficit" and that Dr. Swift's reports of the Plaintiff's concessions do not support such restrictions. *Id*. He also indicated that any such need for intermittent supervision and for major changes to be explained were accommodated by the RFC limitations to an environment with "occasional changes that are explained in advance." *Id*. ALJ Prince also rejected Dr. Haskins' recommended limitations relating to shift, schedule, or break flexibility, pointing out that neither Dr. Swift's notes of Plaintiff's concessions nor Plaintiff's emergency room and hospital visits from August 2016 through July 2020 supported such mental limitations. *Id*. Finally, ALJ Prince explained that he afforded greater weight to the opinion of Dr. Buban in formulating Plaintiff's mental RFC limitations as Dr. Buban reviewed more of the record than Dr. Haskins and her conclusions were more consistent with the overall record. *Id*.

ALJ Prince reasonably discounted Dr. Haskins' opinion. He found that she lacked access to the longitudinal medical records that Dr. Buban reviewed, analyzed, and considered. *Id*; *see* 20 C.F.R. § 404.1527(c)(3). In not adopting her limitations for a separate work area or intermittent supervision, the ALJ reasonably explained that the record did not support a degree of limitation in Plaintiff's ability to interact to warrant such a restriction. (Doc. #6-11, *PageID* #1549). Contrary

8

to Plaintiff's contentions, this statement was not a finding that Plaintiff had no deficits in interaction. In fact, ALJ Prince found that Plaintiff had even greater deficits in social interaction than Dr. Haskins appeared to have found and accommodated this by limiting her to only occasional interaction with supervisors, coworkers, and the public. *See id*. at 1540. Instead, in making this statement, ALJ Prince was simply conveying that Plaintiff's limitations in her ability to interact were not severe enough to warrant a finding that she required a workspace separate from others or only intermittent supervision. *See id*. at 1549. Here, ALJ Prince pointed out that Plaintiff reported "the ability to get along with mostly male supervisors, no problems engaging in customer service work, and that interpersonal issues never resulted in job loss." *Id*. Additionally, to the extent that the limitations for a separate work area and intermittent supervision were aimed at addressing Plaintiff's limitations in her ability to concentrate, persist, and maintain pace, ALJ Prince included restrictions in her RFC that would accommodate such limitations, including the provision that she be limited to simple, routine tasks without fast production requirements. *Id*. at 1540.

Similarly, the ALJ provided good reasons for not including Dr. Haskins' proposed limitation requiring a flexible schedule. While Dr. Haskins opined that Plaintiff would require a flexible schedule during times of increased symptoms, ALJ Prince found that the more recent evidence of record, including the years of serial emergency room and hospital presentations did not demonstrate findings of abnormal mental signs. *Id*. at 1549. Plaintiff challenges the ALJ's reliance on these records, arguing that these records reflect times where she was seeking treatment for her physical ailments so her mental impairments were not being evaluated. (Doc. #8, *PageID* #2231). However, a review of these records indicates that from August 2016 through February

9

2019, Plaintiff's treating sources did document findings related to her mental symptoms, including no focal deficits, full orientation, normal emotional state, normal affect, normal judgment, and normal mood. (Doc. #6, *PageID* #s 856, 1199, 1972, 1989, 2145). Thus, ALJ Prince's evaluation was, in fact, consistent with the medical records. Moreover, despite Plaintiff's arguments to the contrary, the ALJ reasonably relied on these mental examinations. *See Wert v. Comm'r of Soc. Sec.,* 166 F. Supp. 3d 935, 946 (S.D. Ohio 2016) (holding that a doctor's "lack of mental-health specialization does not disqualify him from opining as to Plaintiff's mental status") (citation omitted).

Despite Plaintiff's insistence that Dr. Haskins' limitations should have been incorporated, substantial evidence supports the ALJ's RFC assessment and decision not to include these limitations. Accordingly, the Court must defer to the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion…." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); s*ee also Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")).

Accordingly, Plaintiff's first statement of error is not well taken.

### B. Constitutional Claim

In her second and final statement of error, Plaintiff alleges that 42 U.S.C. § 902(a)(3), which limits the President's power to remove the Commissioner of the Social Security Administration ("SSA") without cause, violates the separation of powers doctrine, and thus,

former-Commissioner Andrew Saul's delegation of power to the ALJ who adjudicated Plaintiff's claim was defective. (Doc. #9, *PageID* #s 2232-36). As a result, Plaintiff contends that she is entitled to a *de novo* hearing before a new ALJ. *Id*.

At the outset, the undersigned notes that Plaintiff's claim is procedurally improper as it raises Constitutional claims that were not initially set forth in her Complaint. (*See* Doc. #3). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." While the complaint need not provide "detailed factual allegations," it does "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action [.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, at minimum, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id*. (quoting *Conley v. Gibson,* 355 U.S. 41, 47, (1957)).

In this case, Plaintiff bases her Constitutional challenge on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020), a United States Supreme Court case that was decided on June 20, 2020. (Doc. #8, *PageID* #s 2232-36). Despite the intervening year between the issuance of this case and the initiation of the current suit, Plaintiff failed to set forth any facts or law related to her Constitutional claim in her June 22, 2021 Complaint. (*See* Doc. #3). As a result, the undersigned finds that Plaintiff failed to provide fair notice to the Commissioner of this Constitutional claim, in violation of Federal Rule of Civil Procedure 8(a)(2), thus making her claim procedurally improper. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by

failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same).

Moreover, Plaintiff's Constitutional claim also fails on substantive grounds. In *Seila Law*, the case upon which Plaintiff bases his claim, the Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. 140 S.Ct. at 2197.

Here, the parties agree that 42 U.S.C. § 902(a)(3), the statute that governs removal of the Commissioner of the SSA, contains a similar restriction on the President's removal authority, and is therefore, unconstitutional to the extent it limits the President's authority to remove the Commissioner of the SSA without cause. (Doc. #8, *PageID* #s 2232-33; Doc. #12, *PageID* #s 2257-58). In turn, Plaintiff alleges that former-Commissioner Andrew Saul's appointment violated the principle of separation of powers, thereby depriving him of authority to carry out any functions of his office, including the delegation of authority to the ALJ who adjudicated Plaintiff's application. (Doc. #8, *PageID* #2233). As a result, Plaintiff claims that he is entitled to a *de novo* hearing before a new ALJ. *Id*. at 2236. However, the Commissioner contends that the ALJ who determined the Plaintiff's claim on March 5, 2021, held office on that date as a result of a ratification of his authority in July 2018 by a former *Acting* Commissioner Berryhill. (Doc. #12, *PageID* #s 2260).

As the Commissioner correctly notes, the removal provisions of § 902(a)(3) do not apply to an Acting Commissioner. *Id*; *see also Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021) ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away.""). Thus, as a factual matter, the potential unconstitutionality of former-Commissioner Andrew Saul's appointment is of no consequence in Plaintiff's case as the ALJ who determined Plaintiff's claim did not derive his power from Mr. Saul. *Accord Thomas E. v. Comm'r of Soc. Sec.*, C21-5107-BAT, 2021 WL 5415241, *5 (W.D. Wash. Nov. 19, 2021) (finding no constitutional injury where ALJ's appointment was ratified by Acting Commissioner Berryhill who, as Acting Commissioner, was not subject to the removal provision in § 902(a)(3)); *Alice T. v. Comm'r of Soc. Sec.*, 8:21CV14, 2021 WL 5302141, *18 (D. Neb. Nov. 15, 2021) (same); *Boger v. Kijakazi*, No. 1:20-cv-00331-KDB, 2021 WL 5023141, *3 n.4 (W.D.N.C Oct. 28, 2021) ("Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because [the ALJ] was appointed by an Acting Commissioner of Social Security who could be removed from the office at the President's discretion.")).

Moreover, even if the ALJ in this case had derived his authority from former-Commissioner Saul instead of former-Acting Commissioner Berryhill, the alleged unconstitutionality of § 902(a)(3) does not necessarily mean that former-Commissioner Saul lacked the ability to delegate the power to others to decide Plaintiff's claim. Indeed, under the doctrine of severability, "'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" *Seila Law*, 140 S.Ct. at 2208 (quoting *Loeb v. Columbia Township*

*Trustees*, 179 U.S. 472, 490 (1900)). Thus, even in the absence of a severability clause, when "'confronting a constitutional flaw in a statute, [the Supreme Court tries] to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.'" *Id*. (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*., 130 S.Ct. 3138, 3161 (2010)). For that very reason, the Supreme Court found in *Seila Law* that the unconstitutional removal provision was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even with the unconstitutional removal provision was stricken. 140 S.Ct. at 2209-10, 2245.

The same is true with regard to the SSA. If the removal provision in § 902(a)(3) is stricken, the SSA would still be capable of functioning independently. *Alice A. v. Comm'r of Soc. Sec.*, Case No. C20-5756, 2021 WL 5514434, *6 (W.D. Wash. Nov. 24, 2021) (rejecting the plaintiff's separation of powers claim, in part, because, even if § 902(a)(3) was unconstitutional, it was severable from the remainder of the statutes governing the SSA); *Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v Comm'r of Soc. Sec.*, 2021 WL 5356719, *8 (same).

Finally, even assuming that the removal provision in § 902(a)(3) is unconstitutional, it does mean that Plaintiff is entitled to a new hearing. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment

14

to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787; *see also id*. at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id*. at 1788–89 (remanding for further proceedings to determine whether compensable harm to the plaintiff occurred due to the President's inability to remove a Director of the FHFA except for cause).

In this case, Plaintiff has made no showing of compensable harm. Indeed, as recognized by Justice Kagan in *Collins*, the President's choice of the SSA Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Collins*, 141 S.Ct. at 1802 (Kagan, J., concurring) ("The SSA has a single head with for-cause removal protection ... But ... I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

Based on the foregoing, Plaintiff's final statement of error is not well taken.[5] Accordingly, the undersigned does not reach the Commissioner's alternative arguments including harmless error, *de facto* officer, the rule of necessity, and other prudential considerations.

---

[5] Notably, this decision is in line with other District Courts in the Sixth Circuit, which have routinely rejected the Constitutional claim raised by Plaintiff and concluded that the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) does not require remand. *See Alec F. v. Comm'r of Soc. Security Admin*., No. 3:20-CV-00467, 2022 WL 278307, at *5 (S.D. Ohio Jan. 31, 2022) (Silvain, M.J.), *report and recommendation adopted sub nom. Alec F. v. Kijakazi,* No. 3:20-CV-00467, 2022 WL 884022 (S.D. Ohio Mar. 25, 2022) (Rice. D.J.); *Crawford v. Comm'r of Soc. Sec.,* No. 2:21-CV-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021) (Vascura, M.J.), *report and recommendation adopted,* No. 2:21-CV-726, 2022 WL 219864 (S.D. Ohio Jan. 25, 2022) (Watson, D.J.); *Bowers v.*

Based on all the foregoing reasons, Plaintiff's Statement of Errors is without merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be **AFFIRMED**; and

2. The case be terminated on the Court's docket.

July 11, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

---

*Comm'r of Soc. Sec.*, No. 2:20-CV-6024, 2022 WL 34401, at *8 (S.D. Ohio Jan. 4, 2022) (Preston Deavers, M.J.), *report and recommendation adopted sub nom. Angela A.B. v. Comm'r of Soc. Sec.*, No. 2:20-CV-6024, 2022 WL 774053 (S.D. Ohio Mar. 14, 2022) (Morrison, D.J.)*;Miley v. Comm'r of Soc. Sec.,* No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi.*, No. 20-518-HRW, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021). Courts from other Circuits have held similarly. *See, e.g.*, *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC (BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned agrees with the reasoning set forth in these other cases and reaches the same result.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).